**UNITED STATES BANKRUPTCY COURT**            <u>**NOT FOR PUBLICATION**</u>
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re:

      EVA GABOR                                  Chapter 7

             Debtor.                 Case No. 05-18719 (ALG)

-------------------------------------------------------------x
ISAAC VIDOMLANSKI AND RUTH
VIDOMLANSKI,

             Plaintiffs,

      - against -                                  Adv. Proc. No. 06-01916 (ALG)

EVA GABOR,

             Defendant.
-------------------------------------------------------------x


## POST-TRIAL MEMORANDUM OF OPINION


A P P E A R A N C E S:

KERA & GRAUBARD
Attorneys for Isaac Vidomlanski and Ruth Vidomlanski
  By:  M. David Graubard, Esq.
240 Madison Avenue
New York, NY 10016

EVA GABOR, *pro se*

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

      Isaac Vidomlanski ("Vidomlanski") and Ruth Vidomlanski (together with

Vidomlanski, the "Plaintiffs") filed this adversary proceeding against the above-

captioned debtor Eva Gabor (the "Defendant"),[1] seeking to hold their debt

nondischargeable or to deny the Defendant a discharge.  Upon the findings of fact and

---

[1] The Defendant's maiden name, Chaya Hirsch, was used in certain of the evidence presented at trial.  The name Chaya Hirsch in this Opinion refers to the Defendant.

conclusions of law set forth below, the Court concludes that the Defendant must be denied a discharge under §§ 727(a)(2) and (a)(4)(A) of the Bankruptcy Code.

**Background**

**A.  The Agreement**

This dispute arises from an oral agreement entered into between the Defendant and Vidomlanski in 2001.  At the time, the Defendant operated Metrojet Travel Corp. ("Metrojet"), a corporation that was owned in name by her then-husband but that she managed exclusively.  She maintained an office at 310 Madison Ave., on the same floor as Vidomlanski, who was in the securities business.  It is undisputed that Vidomlanski, for the Defendant's benefit, purchased an airline ticket for her father to travel from Israel to the United States, using approximately 80,000 airline miles that Vidomlanski had accumulated on his credit cards.  As repayment, the parties orally agreed that the Defendant would charge some of her customers' ticket purchases to Vidomlanski's credit cards so that he could accumulate new airline miles.  The Defendant in turn agreed to reimburse Vidomlanski for the cost of the tickets purchased with his credit cards.

This arrangement continued for several years, with the Defendant charging travel to Plaintiffs' credit cards and repaying the cost of the tickets.  Initially, Vidomlanski vehemently denied giving the Defendant authorization to use his credit cards for any charges other than for a one-time purchase of airline tickets to accumulate 80,000 miles. Later in his testimony, Vidomlanski admitted that when the Defendant asked for updated impressions of his credit cards in 2004, he allowed her to take one impression of each of his three cards.  The testimony as a whole demonstrates that Vidomlanski consented to the use of his cards to accumulate an unlimited number of miles.  As the Defendant testified, her office maintained stacks of blank credit card authorization forms impressed

2

with Vidomlanski's credit card data and bearing his original signature so that they could

effectuate their scheme.  There is no dispute that Vidomlanski frequently came by her

office to read the newspaper and tally up his copies of the credit card receipts.  She

claims to have paid some of the credit card charges directly to Vidomlanski and some to

the credit card companies.  The written record is consistent with this history.

In October 2004, the relationship disintegrated as a result of the Defendant's

failure to pay previous months' balances.  From July through October 2004, the

Defendant charged approximately $89,000 on Vidomlanski's credit cards but only repaid

about $20,000.  By fax dated October 21, 2004, Vidomlanski sent the Defendant two

credit card statements totaling $71,000 and complained about her continued use of the

credit cards.[2]  In another fax dated October 22, 2004, Vidomlanski informed the

Defendant that his wife's credit card had been declined at a gas station and that if the

Defendant didn't have a "solution" by that day, he would have to take steps to protect

himself and his wife.  According to Vidomlanski, the Defendant "lured" him into this

scheme by initially charging only $1,000 to $2,000 per month on his credit cards, but

subsequently charging tens of thousand of dollars beginning in July 2004.  This is an

overstatement.  Vidomlanski claims that once larger charges began, around July or

August 2004, he orally instructed the Defendant to stop using his credit cards, but he

admits that he did not go to her office to remove any credit card impressions on file

because they "were friends, [and they] trusted each other."

The Defendant does not dispute that charges were in fact made on Vidomlanski's

credit cards for which she did not reimburse him and that she used the cash payments

---

[2] The fax stated that "[i]n spite of the knowledge about your difficulties you went ahead and debited my account on September 28 in the amount of 5000 dollars.  I remained pennyless in the two accounts.  If I would not get an answer today I will have to take steps to protect myself."  (Plaintiffs Ex. 45.)

from her customers for the charged tickets to pay other business expenses, such as rent

and salaries, instead of paying off Vidomlanski. But she claims this was caused by

severe financial difficulties at the time, due in part to her impending divorce and to the

failing travel business, and also due to the costs of opening a new company, Globe

International Airlines, Inc., which she planned to establish as a charter flight service. She

testified that she did not initiate charges on Vidomlanski's credit cards knowing she was

not going to pay them back. As support she pointed to evidence in the record that she

made at least one additional payment of $2,000 to Vidomlanski, after her usage of the

credit cards was terminated, in October 2004.

## B.  Defendant's Chapter 7 Filing

On September 26, 2005, the Defendant filed a Chapter 7 bankruptcy petition in

which she listed the Plaintiffs on Schedule F as holding a disputed unsecured nonpriority

claim for a "loan" in the amount of $73,566.00. Question 18(a) of the Statement of

Financial Affairs required the Defendant to "list … all businesses in which the debtor was

an officer, director, partner, or managing executive … within the six-years immediately

preceding the commencement of this case, or in which the debtor owned 5 percent or

more of the voting equity securities within the six-years immediately preceding the

commencement of this case", to which the Defendant answered, "none." Schedule B

required a list of the Debtor's stocks and interests in incorporated and unincorporated

businesses, to which the Defendant also responded, "none."

At a Rule 2004 examination of the Defendant taken by counsel to the Chapter 7

trustee, the Defendant admitted that she ran all the operations of Metrojet. (Exam. Tr.

26:18-20, Apr. 28, 2006.) At the same examination, the Defendant admitted that she was

the 100% owner of Globe International Airlines, which operated in the same office as

4

Metrojet.  (Exam. Tr. 54:20-55:25, Apr. 28, 2006.)  Additionally, during the trial,

Plaintiffs entered into evidence business credit applications in which the Defendant

represented herself as "president" of Metrojet Travel Corp.  (See Plaintiffs' Ex. 6, 7.)

        The Defendant did not dispute that she had incorrectly answered Question 18(a).

However, she claimed that she had relied on her attorney to accurately complete the

paperwork and that she believed, on the advice of her attorney at the time, that since the

businesses were "dissolved" and had no value, she was not required to list them.[3]  She

also claimed that she was confused by the wording of the question, which asked for her

ownership interests within the last six years "immediately preceding the commencement

of this case."  She claimed that she understood this to mean her ownership interests

immediately after the filing of the case.

## C.  Real Property Interests of the Debtor

        On Schedule A to the Petition, which requires a list of the Debtor's real property,

the Defendant also answered "none."  At trial, Vidomlanski raised the question of her

ownership interest in an apartment in Tel Aviv, Israel.  The basic facts relating to the

apartment were not contested or were clearly established at trial.  Thus, the Defendant

initially maintained that she had not been the owner of the apartment since 1987 when

she relinquished title to her father in exchange for debt forgiveness.  Nevertheless, it was

established at trial that she is the title owner, that the cooperative has over the years taken

a firm position that *she* remains the owner of the unit, and she has filed suit in Israel to

force the cooperative to recognize her deceased father as the owner.  Thus, the evidence

includes a 1987 letter from the cooperative to her father stating that it would not

---

[3] The Defendant was represented by counsel in connection her bankruptcy petition and most of the pretrial
proceedings in this adversary proceeding.  Counsel did not appear during the trial, allegedly because the
Defendant could not afford to pay him, but it was evident that he gave her assistance and advice in
connection with the trial.  She represented herself well on a *pro se* basis.

recognize the transfer of ownership until a written agreement had been submitted. (Def. Ex. C and English translation.) Although an agreement dated March 31, 1992, was entered into evidence as the agreement between the Defendant and her father (Def. Ex. D and English translation), the parties did not pay the 2% flip tax also required by the cooperative to transfer ownership, and the Defendant remains the title owner.

In connection with the dispute regarding the apartment in Israel, two versions of the same document were offered by the parties and, as discussed hereafter, are material.[4] One, called hereafter the "2002 Document," was submitted by Vidomlanski (Plaintiffs' Ex. 4.) Dated June 2, 2002, it purports to be a "*Confirmation of Rights in the Association*" from the Meonot Ovdim H' Cooperative Association Ltd. in Tel Aviv and it states that "Ms. Chaya Hirsch [the Defendant] is the sole owner of the above mentioned apartment." (Plaintiffs' Ex. 4.)

The second document was similar to the 2002 Document. (Plaintiffs' Ex. 3.) Dated June 2, 2002, it is the same "*Confirmation of Rights in the Association*" purporting to be from Meonot Ovdim, with the same seals, signatures and handwriting, except that in the second paragraph the handwritten name and ID number of the owner differ – the 2002 Document listing the owner as Chaya Hirsch and this document listing the owner as Shlomo Hirsch, her father. Additionally, the last paragraph of this document is missing a line of text that states "a letter is attached regarding the security/lien of rights mentioned above." This document is called, for reasons to become clear, the "Altered Document."[5]

Vidomlanski maintained at trial that the Altered Document, which lists Shlomo Hirsch as the owner of the apartment, was falsified, and that the Defendant had used the

---

[4] All versions of the document are in Hebrew, with English translations supplied.
[5] Another version of the "Confirmation of Rights in the Association", dated May 7, 2008, also showed the Defendant as the owner of the apartment. This version was allegedly obtained from the Association by a friend of Vidomlanski who lived in Israel. The Court reserved on admitting any of the three documents until it reviewed them further. The Court will exclude the 2008 version as insufficiently authenticated.

document initially in her divorce proceeding to hide assets from her then-husband, and again during this bankruptcy proceeding to hide assets from the Court.  Joseph Maniscalco, counsel to the Chapter 7 trustee, testified at trial that the Defendant had provided him with a copy of the Altered Document during her Rule 2004 examination, and the Defendant admitted this at trial.  She claimed to have received the Altered Document, listing her father Shlomo Hirsch as the owner, from her now-deceased brother in Israel, who had allegedly procured it from the cooperative to be used in support of her divorce proceeding.  The Defendant testified that she believed at the time, as she does now, that the document was an accurate representation of the cooperative's position as to the ownership of the unit, and she vehemently denied that her brother would have had any involvement in altering such a document.

## Discussion

### A.  Nondischargeability

#### 1.  False pretenses, false representation, or actual fraud

Vidomlanski argues that his debt is nondischargeable under § 523(a)(2)(A) of the Bankruptcy Code, which provides, in pertinent part, that a "discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . ."  The three items in subsection (A), false pretenses, false representation and actual fraud, represent differing concepts.  *See Sandak v. Dobrayel (In re Dobrayel)*, 287 B.R. 3, 12 (Bankr. S.D.N.Y. 2002).  Each is narrowly construed in favor of the debtor, so as to carry out the underlying policy of the Bankruptcy Code to grant debtors a "fresh start."  *See Varble v.*

*Chase (In re Chase)*, 372 B.R. 133, 136 (Bankr. S.D.N.Y. 2007). The party seeking an

exception to discharge bears the burden of proof and must establish such exception by a

preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 288-89 (1991).

   (i) False Pretenses

   "False pretenses" references *conduct* that is consciously deceptive or misleading

and "calculated to obtain, or deprive, another of property." *Gentry v. Kovler (In re*

*Kovler),* 249 B.R. 238, 261 (Bankr. S.D.N.Y. 2000). To prove that a debtor acted by

false pretenses, the plaintiff must establish "(1) an implied misrepresentation or conduct

by the Defendant; (2) promoted knowingly and willingly by the Defendant; (3) creating a

contrived and misleading understanding of the transaction on the part of the plaintiff; (4)

which wrongfully induced the plaintiff to advance money, property, or credit to the

Defendant." *Lubit v. Chase (In re Chase)*, 372 B.R. 125, 128 (Bankr. S.D.N.Y. 2007).

   In this case, Plaintiffs have failed to establish that the Defendant engaged in

conduct that was purposefully deceptive or misleading. Plaintiffs claim that her behavior

in initially charging small amounts on their credit cards, repaying them, and then

subsequently charging large amounts during the period from July to October 2004, was

intended to mislead. However, Plaintiffs have not established intent to deceive or even

that Vidomlanski and the Defendant agreed that the monthly charges were not to exceed a

certain amount or that she acted knowingly to create a false impression. The Defendant's

earlier repayments were simply a function of her carrying out an admitted scheme to

which Vidomlanski had consented.

   (ii) False Representations and Actual Fraud

   In contrast to false pretenses, a "false representation" references an *expressed*

*statement*, either oral or written, false and misleading and designed to deceive. *See In re*

*Chase*, 372 B.R. at 128. A finding of false representation rests on proof that the Defendant (1) made a false or misleading statement; (2) with the intent to deceive; (3) on which defendant justifiably relied; and (4) in order to induce the plaintiff to turn over money or property to the defendant. *Id*. "Actual fraud" means common law fraud. *See Weiss v. Alicea (In re Alicea),* 230 B.R. 492, 500 (Bankr. S.D.N.Y. 1999). It generally requires proof of (1) a representation made by debtor to the creditor; (2) debtor's knowledge of the falsity when the representation was made; (3) debtor's intent to deceive in making such representation; (4) creditor's justifiable reliance upon the representation; and (5) creditor's damage as a result. *In re Dobrayel*, 287 B.R. at 12 n. 3, citing *Field v. Mans*, 516 U.S. 59 (1995), holding that § 523(a)(2)(A) requires justifiable, not reasonable, reliance. Both false representations and actual fraud require (1) proof of the debtor's fraudulent intent, and (2) justifiable reliance by the plaintiff.

Vidomlanski has failed to show that he justifiably relied, to his detriment, on the Defendant's representations. *See In re Gonzalez,* 241 B.R. 67, 71 (S.D.N.Y. 1999). The testimony at trial was that he had authorized charges and provided the Defendant with signed impressions of his credit cards. The Court discounts Vidomlanski's claim that he did not authorize the Defendant to make any charges on his credit card other than those for the one-time purchase of tickets. According to both parties, the scheme continued for several years, and the fact that he did not cancel her use of his credit cards demonstrates acquiescence on his part. The facts in this case are thus similar to those in *Terrell v. Krysan (In re Krysan)*, 348 B.R. 348 (Bankr. E.D. La. 2005), where the plaintiff sought to deny discharge to a debt the defendant incurred on her credit card. At one time the plaintiff and defendant had lived together, and the plaintiff knew that the defendant had possession of her credit card and admitted that she gave him permission to use it on

9

occasion.  Plaintiff claimed she was not aware that the defendant had used her credit over

a seven-month period, and that he was failing to pay off the balance, even though she

herself had used the card once during that time period and presumably would have

reviewed the charges on her monthly statements.  The Court found that she had

unjustifiably relied on anything the defendant may have said or done because she failed

to control the account over the entire seven-month period, and it found incredible her

claim that she was not on notice when two credit card payments had been taken directly

from her bank account as a result of the defendant's failure to pay the minimum balance

for two of the seven months.  The Court found that the "alleged falsity of the Debtor's

representation was readily apparent to [plaintiff] through her credit card and checking

account statements."  *Id.* at 353.

In this case, the evidence is also weak that the Defendant acted with fraudulent

intent.  A defendant acts with "fraudulent intent" if he knows or believes that his

statements are false at the time the statements are made.  *Taub v. Morris (In re Morris),*

252 B.R. 41, 48 (Bankr. S.D.N.Y. 2000).  If at the time of a promise a defendant intends

to perform but later cannot do so, "then his initial representation was not false when

made."  *In re Alicea,* 230 B.R. at 501.  "[I]ntent to deceive may be inferred when the

totality of the circumstances presents a picture of deceptive conduct by the debtor, which

indicates that he did intend to deceive and cheat the [creditor]."  *Hong Kong Deposit &*

*Guar. Ltd. v. Shaheen (In re Shaheen),* 111 B.R. 48, 53 (S.D.N.Y. 1990).  It may also be

inferred if the Defendant "knew or believed that he would be financially unable to

perform."  *In re Alicea*, 230 B.R. at 501.

Narrowly construing the statutory exception, Plaintiffs have failed to establish

that the Defendant acted with the requisite intent to defraud Plaintiffs.  The evidence

shows that before July 2004, the Defendant paid the charges she made on Vidomlanski's credit cards in full.  During the four-month period from July to October 2004, the Defendant made approximately $90,000 in charges and reimbursed Vidomlanski for approximately $20,000.  Although the Metrojet business was failing and the Defendant was incurring large expenses in her unsuccessful attempt to start up a new charter business, Plaintiffs have not established that the Defendant knew that she would be financially unable to pay the charges on his credit card at the time the charges were made, or that her hopes of continuing the businesses were baseless.  They have also not shown that she diverted business income to other uses.

Plaintiffs have failed to sustain their burden of proof that the debts should be deemed nondischargeable under § 523(a)(2)(A) of the Bankruptcy Code due to false representations or actual fraud.

## 2. Embezzlement

Plaintiffs argue that their debt is also nondischargeable under § 523(a)(4) of the Bankruptcy Code, which states that a "discharge under section 727 . . . of this title does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

Courts look to federal common law and define embezzlement as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Citik Ka Wah Bank Ltd. v. Wong (In re Wong),* 291 B.R. 266, 279 (Bankr. S.D.N.Y. 2003) (citations omitted).  To establish a claim of embezzlement under § 523(a)(4), the plaintiff must show that:

> (1) property owned by another is rightfully in the possession of debtor; (2) debtor's appropriation of such property to a use other than the use for which the property was entrusted to debtor; and (3) circumstances indicating fraudulent intent.

*Id.* "Absent intent to defraud, a debtor's appropriation of funds does not rise to the level of embezzlement." *Bd. of Tr., Adirondack Carpenters Pension Fund v. Parker (In re Parker)*, 388 B.R. 11, 21 (Bankr. N.D.N.Y. 2008).

Vidomlanski has failed to sustain a showing of a fraudulent appropriation of property on the Debtor's part. The credit card records supplied by Vidomlanski show that both parties had access to the account statements in question, that Vidomlanski continued to receive credit card statements detailing her charges, and that the Defendant did not engage in any secretive activity. In *May v. Lyon (In re Lyon)*, 348 B.R. 9 (Bankr. D. Conn. 2006), the Court refused to find that the defendant had acted with the requisite intent to establish embezzlement where the plaintiff had granted the defendant access to a bank account and "the Debtor was authorized to make the subject withdrawals or reasonably believed that her withdrawals from the . . . [a]ccount were authorized by the Plaintiff." *Id.* at 26. On the record, Plaintiffs have failed to show that the Defendant should be denied a discharge under § 523(a)(4) of the Bankruptcy Code.

### 3. Willful and malicious injury

Plaintiffs finally argue that their debt should be nondischargeable under § 523(a)(6) of the Bankruptcy Code based on a finding of willful and malicious injury to Vidomlanski's credit rating. In pertinent part, the statute states that a "discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

To find an exception to discharge, the plaintiff must establish by a preponderance of the evidence that the Defendant, by his or her actions, intended to injure the plaintiff. *See Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006). To prove that an injury was

12

willful, there must be a showing of a "'deliberate or intentional *injury*, not merely a deliberate or intentional act that leads to an injury.'"  *Id.* at 69 (emphasis in original). Additionally, a malicious injury must be "'wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will.'"  *Ball*, 451 F.3d at 69.  In *Grady v. Turner (In re Turner)*, 255 B.R. 693 (Bankr. E.D. Mich. 2000), the controversy surrounded debts on a credit card which the plaintiff had authorized the debtor to use. Later, the plaintiff alleged that defendant had made unauthorized use of the cards for his own personal purposes and had thereby converted her property, which resulted in willful and malicious injury under § 523(a)(6).  The Court held that the count could not be sustained where there was no evidence of an intent to injure the plaintiff and where the plaintiff could not prove "that defendant converted plaintiff's credit, that is, used it without authorization."  *Id.* at 695.

Although Plaintiffs' credit rating and financial history may have been adversely affected by the actions of the Defendant, Plaintiffs again have failed to establish that the Defendant acted with the requisite intent.  No evidence has been offered that the Defendant intended that her actions injure the Plaintiffs' credit rating.  The evidence points to a finding that the Plaintiffs' credit rating was a casualty of the parties' scheme to accumulate and use miles.

## B.  Denial of Discharge

### 1.   Concealment of Property and False Oath – Use of an Altered Document

Plaintiffs rely on two subsections of § 727 of the Bankruptcy Code to contend that the Defendant should be denied a discharge.

First, Plaintiffs argue that the Defendant should be denied a discharge under § 727(a)(4)(A) of the Bankruptcy Code based on the Defendant's failure to acknowledge

ownership of the Israeli apartment or to list the apartment and her previous business positions and interests on her bankruptcy petition.  In pertinent part, § 727(a)(4)(A) provides that "[t]he court shall grant the debtor a discharge, unless  . . . the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account."

In order to prevail on such a claim, a plaintiff must prove, by a preponderance of the evidence, that "(1) Debtor made a statement under oath, (2) such statement was false, (3) Debtor knew the statement was false, (4) Debtor made the statement with the intent to defraud creditors, and (5) the statement related materially to the bankruptcy case." *In re Gollomp*, 198 B.R. at 437; *see also Baron v. Klutchko* (*In re Klutchko*), 338 B.R. 554, 567 (Bankr. S.D.N.Y. 2005).  The bankruptcy petition and schedules of a debtor are considered statements under oath for purposes of § 727(a)(4)(A).  *See NOF v. Gannon (In re Gannon)*, 173 B.R. 313, 320 (Bankr. S.D.N.Y. 1994).

A statement must relate materially to a bankruptcy case in order for a debtor to be denied a discharge for having made a false oath.  *See In re Bressler*, 387 B.R. at 461. Both omissions and affirmative misstatements constitute false statements under § 727(a)(4)(A).  *Forrest v. Bressler (In re Bressler)*, 387 B.R. 446, 460 (Bankr. S.D.N.Y. 2008).  Actual fraud must be shown and constructive fraud is insufficient, but a showing of "reckless indifference to the truth" will satisfy the standard.  *In re Klutchko*, 338 B.R. at 567.  To the extent "it reasonably appears that the oath is false, the burden falls upon the debtor to come forward with evidence to prove that it was not an intentional misrepresentation."  *In re Gollomp*, 198 B.R. at 437.  If the debtor fails to do so, or to provide a credible explanation for such failure, the court may infer fraudulent intent.  *Id.*

14

Plaintiffs also argue that the Defendant should be denied a discharge under § 727(a)(2) of the Bankruptcy Code because she used forged or altered documentation to support her claim that she was not the owner of the apartment in Israel.  In pertinent part, § 727(a)(2) states that:

> The court shall grant the debtor a discharge, unless . . . the debtor, with the intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition.

"Concealment has been defined as 'placing assets beyond the reach of creditors or withholding knowledge thereof by failure or refusal to divulge owned information.'" *Painewebber Inc. v. Gollomp (In re Gollomp)*, 198 B.R. 433, 440 n. 6 (S.D.N.Y. 1996). The act in question need not be a transfer of property; concealment of property is sufficient to meet the requirements of the statute.  *See Pereira v. Gardner (In re Gardner)*, 384 B.R. 654, 663 (Bankr. S.D.N.Y. 2008).

In determining whether a discharge should be denied under any part of § 727, the record "must be construed strictly against those who object to the debtor's discharge and liberally in favor of the bankrupt."  *In re Cacioli,* 463 F.3d 229, 234 (2d Cir. 2006). "The party objecting to discharge bears the burden of proving the elements required by the statute by a preponderance of the evidence."  *Forrest v. Bressler (In re Bressler)*, 387 B.R. 446 (Bankr. S.D.N.Y. 2008); *see also In re Gardner*, 384 B.R at 663-64.

Plaintiffs' argument that the Defendant should be denied a discharge is based on failure to disclose the Israeli apartment and her business interests in her Chapter 7 petition and her use of an altered document regarding the apartment in Israel.  The basic facts relating to the apartment are clear.  It was originally owned and used by her.

15

Thereafter, it was used for income-producing purposes; it appears that her father and mother did not use it as a residence. There is no question that the Defendant tried to transfer ownership of the apartment to her father in 1992, when she and her father signed an agreement of transfer, and she probably did so even earlier, in 1987, when she says they initially agreed to the transfer. Nevertheless, it is equally clear that they never paid the 2% flip tax and that the Defendant knew that she was still the legal owner and that the co-op had continued to take this position over all the intervening years. Indeed, as noted above, she is currently suing the co-op to force it to place the property in the name of her father's estate. At the time of trial she also admitted that she continues to receive the rent from the apartment. She testified that her father used to receive the rent and would then forward her the money to put into her mother's bank account in New York. She then testified that upon her father's death in January 2003, her mother said that she could keep the rental income for herself, and she has done so since that time.

The Defendant not only failed to list the apartment in her petition. She also made other material misstatements in her filings. Question 18(a) of the Statement of Financial Affairs required the Defendant to "list … all businesses in which the debtor was an officer, director, partner, or managing executive … within the six years immediately preceding the commencement of this case . . .", to which the Defendant answered "none." There is no dispute that this statement was false. The Defendant admitted that she ran all the operations of Metrojet. (2004 Exam. Tr. 26:18-20, 29:23-30:2, Apr. 28, 2006). Even ignoring the evidence that she had represented herself to be "president" of Metrojet Travel Corp. (see Plaintiffs' Ex. 6, 7), and accepting that she was not an officer, she was unquestionably a manager. She was also admittedly the 100% owner of Globe International Airlines, which operated in the same office as Metrojet. (Exam. Tr. 54:20-

16

55:25, Apr. 28, 2006.)  The Defendant claimed that Globe never got off the ground and that Metrojet was failing or had failed, but these are not adequate excuses for failure to disclose.  A debtor cannot avoid a denial of discharge by arguing that a false statement or omission relates to property of inconsequential value or did not cause direct financial prejudice to creditors.  *In re Bressler*, 387 B.R. at 461; *In re Klutchko*, 338 B.R. at 568. The Defendant's omissions of Metrojet Travel Corp. and Globe International Airlines, Inc. should be considered material, as Defendant's financial history for the last 12 years was tied to these two companies.

The Defendant did not dispute that she had incorrectly answered Question 18(a), where she failed to disclose her status as a managing executive of a business.  However, she claimed that she had relied on her attorney to accurately complete the paperwork and that she believed, on the advice of her attorney at the time, that since the businesses were dissolved or had no value, she was not required to list them.  She also claimed to be confused by the wording of the question, which asked for her ownership interests in the last six years "immediately preceding the commencement of this case," which she believed to ask for her ownership interests immediately after the filing of the case.

The Court cannot credit the Defendant's testimony on this point.  She failed to adduce evidence that her attorney advised her incorrectly.  While she represented herself *pro se* at trial, she demonstrated competence consistent with that of a manager of a business.  She has worked in the United States since 1979 and has operated several businesses during that time and appeared capable of understanding the question contained in the Statement of Financial Affairs.

"For purposes of section 727(a)(4)(A), otherwise immaterial falsehoods or omissions can aggregate into a critical mass substantial enough to bar a debtor's

discharge." *In re Bressler*, 387 B.R. at 462. As the Court said there, "even if each falsehood or omission considered separately may be too immaterial to warrant a denial of discharge pursuant to § 727(a)(4)(A) certainly the multitude of discrepancies, falsehoods and omissions taken collectively are of sufficient materiality to bar the Defendant's discharge." *Id.*, quoting *Bank of India v. Sapru (In re Sapru)*, 127 B.R. 306, 315-16 (Bankr. E.D.N.Y. 1991). "'[N]umerous omissions that display a pattern of misleading conduct are sufficient to establish a fraudulent false oath.'" *In re Bressler*, 387 B.R. at 462; *see also Corning Vitro Corp. v. Shah (In re Shah)*, 169 B.R. 17, 20-21 (Bankr. E.D.N.Y. 1994). The Court finds that Defendant made false oaths or accounts within the meaning of to § 727(a)(4)(A).

In addition to the misstatements or omissions in the petition, the finding is inescapable that she used an altered document to attempt to prove ownership of the apartment by her father and to disclaim her ownership. The document in question is the Confirmation of Rights in the Association dated June 2, 2002. One version, called the 2002 Document above, shows the Defendant as the owner and contains a line that says "a letter is attached regarding the security/lien of rights mentioned above." The Altered Document is identical except that it contains the name and identity number of the Defendant's father and omits the line regarding the attachment. The Defendant submitted the Altered Document to the Chapter 7 Trustee at the Rule 2004 examination and to the Court at the trial. She claimed at trial that her brother had faxed it to her lawyer in 2002 for use in connection with her divorce proceedings.

Vidomlanski first raised the issue of forgery on a motion for summary judgment, asserting that he had obtained the 2002 document from the co-op and that it contained

the true facts relating to ownership.[6]  The Defendant's *Affidavit in Opposition to Motion for Summary Judgment*, dated June 24, 2008, which was prepared with the help of her bankruptcy counsel at the time, did not claim that the 2002 Document was not an accurate statement of the co-op's position.  She speculated that Vidomlanski might have altered the document or instructed the cooperative how to fill it out.  However, at trial she admitted that she is currently suing the cooperative to force it to place the apartment in the name of her deceased father's estate.  Moreover, on the summary judgment motion, she averred that "[t]he co-operative paperwork entitled 'Confirmation of Rights in the Association' describing my father as the owner was obtained from my father's paperwork after he died."  (Plaintiffs' Ex. 46, ¶ 22.)  When questioned at trial regarding the inconsistency between her affidavit and her testimony that her brother had faxed it, the Defendant first stated that she could not remember whether she had ever even seen the affidavit.  She then stated that maybe her brother had been in possession of a copy of the Confirmation of Rights, and that the original had been found in her father's papers at his death.

Based on the entire record, the inescapable conclusion is that the Altered Document was altered to change the name and identity number from that of the Debtor to that of her father.  Comparison of this document with the 2002 Document confirms that the writing on each is identical.[7]  However, there are several key differences.  The first is a fax line on the Altered Document and the written text above the line stating

---

[6] The motion was denied on the basis that questions of fact existed.

[7] Under Rule 901 of the Federal Rules of Evidence, the Court as the trier of fact is authorized to compare documents for authentication purposes.  *Norwest Financial Consumer Discount Co. v. Koch (In re Koch)*, 83 B.R. 898, 903 (Bankr. E.D. Pa. 1988).  "The process of authentication by comparison rests upon the notion that with respect to a particular item, there are so many common identifying characteristics that it is possible by this means to establish that the exemplar and the item in question have the same origin."  Russell, Bankruptcy Evidence Manual, § 901.3 (2006 ed.).  Rule 901 is applicable to all comparisons, not just handwriting.  *Id.*; *see also Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 546 (D. Md. 2007).

"Attn: Richard."  This was explained at trial as the fax information resulting from the transmission of the document to the Defendant's lawyer in her divorce proceedings. Second, the writing on the Altered Document appears heavier on the area identifying Shlomo Hirsch (the father) as the owner and listing his identification number. Furthermore, one entire line of text is missing from the Altered Document.  The text continues after the blank line, in a way that is clearly illogical.  Based on a comparison, the conclusion is inescapable that the 2002 Document was altered to delete her name and ID number as the owner of record, to substitute the name and ID number of her father, and to omit any mention of the attachment.

"'Forgery . . . is the false making or material alteration or addition to a written instrument for the purpose of deceit and fraud' and a test of forgery is whether a person has falsely made a writing which purports to be any act of another with the purpose to defraud."  *Treuhold Capital Group LLC v. Cohen (In re Cohen)*, 2009 Bankr. Lexis 1803, at *32 (Bankr. E.D.N.Y. June 29, 2009), quoting *Int'l Union Bank v. Nat'l Surety Co.*, 245 N.Y. 368, 373, 157 N.E. 269 (1927).  There is no doubt on this record that the Defendant used an altered document.  The further question is whether she knew it was altered.  During trial, the Court questioned the Defendant as to who might have altered the document.  In her defense, the Defendant alleged that her now-deceased brother had faxed a copy of the Altered Document to her divorce attorney for use in those proceedings, that she did not alter the document and that her brother never would have done so.  However, these assertions are contradicted by the admitted fact of the co-op's position regarding *her* ownership.

In *Hansen v. Moore (In re Hansen)*, 368 B.R. 868 (9th Cir. B.A.P. 2007), the Bankruptcy Appellate Panel held that a discharge would be denied under § 727(a)(2)

based upon the debtor's transfer of a property through the recordation of a deed of trust that she had altered.  The debtor argued that she had done so on the advice of counsel, but the Court found such explanation to be incredible, and after examining the circumstantial evidence and the debtor's explanation stated, "'[i]t is axiomatic that the debtor cannot prevail if [s]he fails to offer credible evidence after the creditor makes a prima facie case.  A debtor's failure to offer a satisfactory explanation when called on by the court is a sufficient ground for denial of discharge . . .'" *Id.* at 876.  Likewise, the Defendant here has failed to offer a plausible explanation as to the Altered Document, which she offered at the 2004 examination conducted by the Chapter 7 Trustee and at trial in this Court.  She must also be denied a discharge under § 727(a)(2) of the Bankruptcy Code.

In this case, the several misstatements or omissions in the petition, the inconsistencies in the Defendant's testimony, and the use of the Altered Document, taken collectively, compel the conclusion of reckless disregard for the truth.  The Court finds that based on the record, the Defendant made a false oath or account within the meaning of § 727(a)(4)(A) and acted with the required intent and concealed property within the meaning of § 727(a)(2).

21

### **Conclusion**

For the reasons set forth above, the Defendant is denied a discharge in her

Chapter 7 bankruptcy proceeding pursuant to §§ 727(a)(2) and (a)(4)(A) of the

Bankruptcy Code.  The other claims in the Complaint are dismissed.  Counsel for the

Plaintiffs should settle an order on five days' notice to the Defendant and her former

bankruptcy counsel.

Dated: New York, New York
      October 8, 2009


                       */s/ Allan L. Gropper*_____
                       UNITED STATES BANKRUPTCY JUDGE